Michael Hucul
PO Box 2638
San Marcos, CA 92079
(760) 916-6730
hucul@sbcglobal.net
(Relator)

**FILED**
NOV 05 2018
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

SEALED

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

The United States of America
Michael Hucul (Qui Tam Plaintiff)

    Plaintiff,

v.

The State of California and it's Department of Child Support Services, the County of San Diego and it's Department of Child Support Services, Gower and Bluck Law and Mediation and Attorney Samuel Bluck; the Law Offices of Jeremy Martin and Attorney Jeremy Martin; the Law Office of Steven M. Bishop and Attorney Steven M. Bishop; the Law & Mediation Firm of Klueck & Hoppes, APC and Attorneys Garrison Klueck, Traci Hoppes and Jeffery Miller.

The State of Michigan, it's Department of Health and Human Services, and it's Friend of the Court Bureau, the County of Ingham and the Ingham County Friend of the Court; Kronzek & Cronkright, P.L.L.C. and Attorney Charles M. Kronzek;

    Defendants.

Case No: 18 CV 1306 DMS JMA

**Complaint for Violations of the Federal False Claims Act 31 U.S.C. § 3729 et. seq..**

**Demand for Jury Trial**

**Filed under seal**

Action filed: June 18, 2018

## Jurisdiction

This District Court has jurisdiction under 31 U.S.C. §3732.

1

## Table of Contents

Introduction..................................................................................................3

Background..................................................................................................3

Statement of the Case..................................................................................5

Conclusion....................................................................................................6

## Introduction

1. On behalf of the United States of America (Government), qui tam relator, Michael Hucul (Relator) pursuant to 31 U.S.C. § 3729 et. seq., brings this action against the State of California and it's Department of Child Support Services, the County of San Diego and it's Department of Child Support Services; the State of Michigan, it's Department of Health and Human Services, and it's Friend of the Court Bureau, the County of Ingham and the Ingham County Friend of the Court Family Division; (State Defendants) Gower and Bluck Law and Mediation and Attorney Samuel Bluck; the Law Offices of Jeremy Martin and Attorney Jeremy Martin; the Law Office of Steven M. Bishop and Attorney Steven M. Bishop; the Law & Mediation Firm of Klueck & Hoppes, APC and Attorneys Garrison Klueck, Traci Hoppes and Jeffery Miller; Kronzek & Cronkright, P.L.L.C. and Attorney Charles M. Kronzek; (Attorney Defendants) to recover all damages, civil penalties, and other recoveries provided for under the law for the false or fraudulent claims and documents submitted by State Defendants with the help of Attorney Defendants to the Government to receive an estimated two billion dollars in Federal incentives.

## Background

2. Title IV-D of the Social Security Act, (Act) (42 U.S.C. §§ 601-687) indicates in part, each State as a condition for having its State child support plan approved, must establish guidelines for the enforcement of child support obligations owed by the "noncustodial" Parent. (§651)

3. The Supreme Court of the United States stated, "We think the Secretary's construction is amply supported by the text of the statue which shows that Congress used "child support" throughout Title IV of the Social Security Act and its amendments as a term of art referring exclusively to payments from absent parents. (Sullivan v. Stroop, 496 US 478 1990))

4. The Act intended to minimize the financial impact single parents had on the States AFDC and TANF programs by incentivizing the States to enforce their child support orders. Page 20 of the March 1980/Vol 43, No.3 of the Social Security bulletin states, "The child support enforcement (CSE) program was established in 1975 by the Secretary as directed in title IV-D of the Social Security Act. The program collects money on behalf of

families to compensate the Federal, State, and local governments for payments made under the aid to families with dependent children (AFDC) program by seeking remuneration from absent parents according to their ability to pay."

5. Under the approval from the Secretary of the United States Department of Health and Human Services, a State can receive Federal incentives of up to $3 for every $1 the State orders a noncustodial Parent to pay in child support. (§658a(5)(C))

6. Since 1975 single parenting has diminished and "joint custody" parents remain active in the lives of their children, yet the older child support laws remain and languish within our family court systems, and because these laws discriminate against "Fathers" and Parents, they are "stunningly anachronistic". (Sessions v. Morales-Santana, Supreme Court (2017))

7. Both the State of Michigan and the State of California's child support laws are based on how much time a child spends with their Parents. (Michigan Child Support Manual and the State of California Family Code §4055) For example, the more time a child has with their Parents, the less the State of Michigan and the State of California can order in child support payments, consequently they receive less in Federal incentives.

8. In 2004 the State California collected $346 million dollars in "Non IV-D" child support, and in 2014 this amount increased 500% to $1.9 billion dollars. (Exhibit "1") "Non IV-D" child support is child support where neither Parent nor their child received any Federal or State financial assistance such as ADFC or TANF.

9. The May 2, 2013, report by Congressional Research Service, (CRS) indicated Michigan received $24,466,511 in Federal child support incentive payments in 2011; in 2015 Michigan estimated it would receive $25.8 million in Federal child support incentive payments. (Exhibit "2") At this time it is unknown what part of these Michigan payments are "Non IV-D".

4

10. According to the Centers for Disease Control and Prevention, excluding data from California, the National divorce rate in 2004 was 3.7 divorces per 1,000 total population, and in 2014 it decreases to 3.2 divorces per 1,000 total population. (Exhibit "3") The data indicates from 2004 - 2015 California and Michigan received increases in child support incentive payments, but the National divorce rate decreases during the same time period.

### Statement of the Case

11. In 2004 Plaintiff was granted joint legal custody of his Son, was fit, provided a home, medical insurance, food and access to education, yet was ordered without a hearing by the State of Michigan to pay child support. In 2013 Plaintiff was granted joint custody of his Son by the State of California and was ordered to pay child support. (Exhibit "4")

12. During frequent subsequent hearings from 2012 to 2016 Attorney Defendants Kronzek filed documents, meant to increase child support amounts, with the Michigan Court that were signed into an order without a hearing, these documents were also used against Plaintiff in California.

13. Attorney Defendants Bluck and Martin signed documents without Plaintiff's knowledge or a hearing that prevented Plaintiff's Son from his Court ordered Parenting times with Plaintiff, and because child support is based on how much time Plaintiff's child has with Plaintiff, the County of San Diego and the State of California calculated more child support was owed and therefor received an unjust enrichment.

14. Attorney Defendants Bishop knew of Bluck and Martin's actions in December 2013 and did nothing to correct it, but instead charged Plaintiff over $8,000 in legal fees just for the month of February 2014, and several times threatened to withdraw as Plaintiff's attorney unless Plaintiff paid tens of thousands of dollars to Bishop.

15. Attorney Defendants Klueck signed documents without Plaintiff's knowledge that provided personal information to the State of California's Automated Data Matching System. (ADMS) (Exhibit "5")

16. The ADMS connects California and Michigan to other states, banking institutions, and employers to locate non-custodial parents who owe child support. (42 U.S.C. §§ 654, 654a(f)(5), 666(a)(3), 666(a)(4)(A), 666(a)(6), 666(a)(7), 666(a)(17)(A)(i)(ii), & 666(b).

17. The State of California, the County of San Diego and their Department of Child Support Services changed the Court ordered joint custody parenting status of Plaintiff to an absent, non custodial parent on documents submitted to the ADMS that resulted in $3,217 taken from Plaintiffs joint bank accounts, suspended Plaintiff's real estate broker license, and it is understood this false information is also used to acquire Federal child support incentives.

## Conclusion

18. Currently there are no Federal laws or State of California or Michigan laws that require joint custodial Parents to pay child support. It is Plaintiff's understanding and belief that Michigan and California, and possibly other States are changing Plaintiff and those similarly like him from joint custodial Parents to noncustodial/absent Parents for the purposes of collecting billions in Federal child support incentives.

Respectfully submitted.

Date: June 18, 2018

_____
Michael Hucul
Relator
In Pro Se